**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**NEAL HALEY and SHERRY HALEY, ET AL.**                                              **PLAINTIFFS**

**V.**                                                                                         **NO. 4:09CV00094-WAP-DAS**

**MERIAL, LIMITED, ET AL.**                                                                                        **DEFENDANTS**

**<u>ORDER</u>**

Before the court is the plaintiffs' motion for a Rule 26(c) protective order and to terminate or limit deposition of Dr. Peter Rost under Rule 30(d) (# 153). Having fully considered the record and the submissions of the parties, the court finds as follows:

<u>Rule 30(d) & Rule 26(c) Motions</u>

The court has considered the arguments made in support of terminating or limiting Dr. Rost's deposition and for a protective order and finds they are without merit. First, it should be pointed out that a careful reading of the entire deposition transcript supports the conclusion that many instances of the alleged misconduct were nothing more than attempts by defense counsel to test Dr. Rost's credentials and experience as an expert in the area of pharmaceutical marketing. The defendants point out, and Dr. Rost's own testimony indeed shows, that he submitted an expert report and CV that contained inaccurate information about his professional background.[1] The court has found nothing in the transcript evidencing bad faith or an improper attempt to embarrass or harass the witness.

---

[1] During the deposition Dr. Rost explained that his report and CV contained several errors because he had inadvertently replaced terms like "doctor" and/or "physician" with "veterinarian" and "animals" with "patients," using his computer's "find and replace" command. Rost Dep. 41:4-46:13.

*Protective Orders*

First, the plaintiffs complain that defense counsel violated numerous protective orders[2] by improperly obtaining and asking Dr. Rost questions about expert reports and deposition testimony in other cases that are confidential and governed by protective orders. The plaintiffs argue that this conduct was unethical and suggest that defense counsel either knew or should have known that the conduct violated the protective orders. Among other things, defense counsel responds that he was not a party to those cases cited by the plaintiffs and received redacted copies of transcripts of Dr. Rost's other depositions from defense lawyers who participated in those cases. Additionally, defendants point out that defense counsel neither sought nor elicited any confidential information from Dr. Rost during his deposition in this case.[3] A reading of the deposition transcript shows clearly that when asked about other expert reports, Dr. Rost explained that he felt he could not reveal any information because it was confidential. *See* Rost Dep. at 66:17-24. After this explanation, defense counsel explained that he was not asking Dr. Rost to violate any confidentiality agreement and changed the nature of his questioning. *See id*. at 68:4-80:16. Accordingly, the plaintiffs have failed to show that defense counsel elicited any

---

[2]The plaintiffs have identified only three protective orders from other pharmaceutical cases.

[3]The plaintiffs have subpoenaed copies of the deposition transcripts and other materials defense counsel used to assist him during Dr. Rost's deposition, and defendants and defense counsel have filed objections to the request. In their reply brief to the instant motion, the plaintiffs suggest that they are unable to prove that defense counsel knew about the existence of the protective orders because defense counsel has refused to respond to the subpoena. While no formal motion is before the court on this issue, the court finds that this issue is immaterial because no confidential information was elicited during Dr. Rost's deposition.

testimony from Dr. Rost that would violate any protective order.[4]  Furthermore, to the extent the plaintiffs seek enforcement of protective orders of other courts, this issue is more properly one that should be addressed by those courts whose protective orders have been allegedly violated.

*"Aura of Sexuality"*

The plaintiffs also complain that defense counsel's use of exhibits containing "scantily clad" women and asking other allegedly inappropriate questions created an "aura of sexuality" that was intended to harass and embarrass Dr. Rost.  As an initial matter, a complete reading of the deposition transcript leaves the court with a completely different impression regarding defense counsel's line of questioning and use of the subject exhibits.  Shortly after the deposition began, defense counsel began a line of questioning regarding Dr. Rost's use of his website and blog to market himself as a pharmaceutical marketing expert.  For example, at one point defense counsel required Dr. Rost to answer questions about his blog and website that suggested he had limited or no experience with animal health companies and veterinary drugs.  *See* Rost Dep. at 139:22-141:5.  Eventually, defense counsel moved from questions regarding the website and blog to questions about other "marketing devices"[5] used by Dr. Rost to market himself.  *See* Rost Dep.

---

[4]Additionally, the copy of Dr. Rost's "Actiq" expert report, Exhibit 91 to the Rost Dep., contains numerous redactions.  And, all three of Dr. Rost's expert reports on "Industry Standards For Drug Companies," Exhibit 92 to the Rost Dep., are public filings in Florida district court.

[5]Exhibit 98 to Dr. Rost's deposition is a photograph of a model clad in a makeshift dress consisting of small photographs of Dr. Rost held together by what appear to be small metal rings.  Defense counsel asked Dr. Rost to explain how he used the makeshift dress photo to market himself.  Rost Dep. 145:18-146:13.  Counsel then moved on to Exhibit 99, an article entitled "Cheerleaders, Your Doctor and Big Brother," which included a photo of a woman in a revealing nurse's costume.  *Id.* at 147:8-13.  Apparently, Dr. Rost had posted the article to his blog.  Counsel asked Dr. Rost to explain how he used the picture of the model and the text of the article.  *Id*.

3

at 144:5-146:13. The defendants explain that some of Dr. Rost's marketing strategies call into question the seriousness with which he approaches his work. The court could find nothing inappropriate about defense counsel's use of the subject exhibits, and the transcript supports the defendants' explanation regarding their relevance.

Next, the plaintiffs complain that defense counsel put inordinate emphasis on Dr. Rost's former employment in the modeling industry. The court could find nothing in the transcript or record supporting this accusation. Defense counsel asked a very limited number of questions regarding the nature of Dr. Rost's employment in modeling among several other questions about his work history with the apparent aim of fleshing out the source of his experience in pharmaceutical marketing. *See* Rost Dep. at 113:16-115:13. Lastly, the plaintiffs complain that defense counsel made unnecessary reference to the fact that Dr. Rost was featured in an article in Hustler Magazine. The defendants respond that the subject article has no sexual content and point out that it is relevant to the issue of Dr. Rost's experience as a pharmaceutical executive. The deposition transcript supports the defendants' explanation. *See* Rost Dep. at 122: 8-125:15.

*Altered Documents*

Here the plaintiffs lodge the very serious accusation that defense counsel presented altered and otherwise tampered with documents to the witness during the course of the deposition. The first document is a printout of the picture dress and the second is the "Cheerleaders" article. With regard to the picture dress, the plaintiffs argue that the "photoshopped" picture was essentially altered because it was not presented in the context of an article in which it purportedly originally appears. The plaintiffs concede, however, that the picture may be downloaded exclusive of the article via a Google Images search. First, the

4

plaintiffs' allegations of altering and tampering fail because it is clear the image may be downloaded from the internet exclusive of the article. Second, these allegations are meritless because the transcript shows that defense counsel's questions regarding this exhibit were restricted to what Dr. Rost knew about the genesis of the photograph and whether it was "another marketing device" used by him to promote himself as a pharmaceutical marketing expert.

The plaintiffs' allegations regarding the "Cheerleaders" article are likewise without merit. The plaintiffs argue, among other things, that because the article was presented to the witness exclusive of a legal disclaimer, it had been materially altered. The article and accompanying photograph had been posted to Dr. Rost's blog. Apparently, on the internet the article contains a hyperlink to an "important legal disclaimer" at the very end.[6] First, it is clear that the complete article was presented to the witness, and the legal disclaimer could only be accessed by clicking on the link while on the website. And, after defense counsel presented the document to Dr. Rost, he (Dr. Rost) quickly pointed out that the legal disclaimer was missing. Moreover, counsel's questions again were restricted to inquiry about the extent to which the text of the article and the photograph were used as a marketing device. Accordingly, the court finds no improper conduct on the part of defense counsel.

Ultimately, after a careful reading of the transcript, it appears that the witness was treated respectfully and fairly by defense counsel, and defense counsel exhibited no bad faith. With regard to each alleged offensive question and/or exhibit, Dr. Rost was given the opportunity to

---

[6]The legal disclaimer provides: "This blog is designed to be provocative, confrontational, irreverent, mocking, impertinent, flippant, impudent, bold, enlightening, naughty, mischievous, funny and tongue-in-cheek. If you have no humor or if you are a boring person you are not supposed to read this blog."

respond fully and explain his answers.[7] The court agrees with the defendants' view that Dr. Rost is a very adept and seasoned expert witness,[8] and defense counsel actually indulged him in many instances where he was either being nonresponsive or simply evading straightforward questions.[9] Based on this, the plaintiffs' Rule 30(d) motion and motion for protective order are **DENIED**.

## Deadlines

The plaintiffs shall make Dr. Rost available for completion of his deposition within 14 days of this date. The defendants shall have 14 days after completion of Dr. Rost's deposition in which to designate any expert on class certification issues. The discovery deadline will be 30 days from the defendants' expert designation deadline, and the plaintiffs shall file their class certification motion within 30 days of the discovery deadline.

## Sanctions

The court finds that plaintiffs' counsel shall pay the defendants' reasonable expenses in opposing the instant motion, including attorney's fees, pursuant to FED. R. CIV. P. 37(a)(5). Additionally, plaintiffs' counsel shall pay defendants' costs and reasonable expenses for resuming Dr. Rost's deposition. The court is aware that during the deposition plaintiffs' counsel attempted to bring this matter before the court, but the undersigned was unavailable. Nevertheless, the court finds that the deposition was terminated by plaintiffs' counsel without sufficient cause.

Prior to terminating the deposition, plaintiffs' counsel stated on the record: "These things

---

[7]*See* for example Rost Dep. at 98:3-100:5 and 147:8-152:1.

[8]*See* for example Rost Dep. at 66:9-24.

[9]*See* for example Rost Dep. at 74:4-75:13; 111:13-113:1; 116:25-121:9.

have nothing to do with his opinion . . . . And you are intentionally attempting to harass him and make him mad." Rost Dep. 153:5-7. Following this statement, defense counsel attempted to convince plaintiffs' counsel not to end the deposition in light of the expense of having to return to New Jersey and resume it at another time and agreed to limit his remaining questions to "case specific materials" contained in Dr. Rost's expert report for this case. *Id*. at 153:14-19 and 155:17-156:24. Plaintiffs' counsel refused this offer despite the fact that he had previously insisted upon defense counsel's restricting his questions to Dr. Rost's report for this case. Therefore, under the circumstances it was unreasonable for plaintiffs' counsel to end the deposition, and he should bear the burden of costs and reasonable expenses incurred by the defendants to complete it. Accordingly, within 10 days of completion of Dr. Rost's deposition, defense counsel shall file an affidavit of costs and reasonable expenses incurred in completing the deposition and responding to the instant motion. Plaintiffs' counsel may file any response in opposition to defense counsel's affidavit within 5 days of its filing.

SO ORDERED THIS the 11th day of January, 2011.

/s/ David A. Sanders
U. S. Magistrate Judge